**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Northern Division**

DALE HARRIS                        :
4722 Coralberry Court
Aberdeen, Maryland 21001       :

     Plaintiff,                :

v.                              :   Case No. _____

HARFORD COUNTY, MARYLAND  :
220 South Main Street
Bel Air, Maryland 21014      :

     Defendant.           :

Serve on:                   :
     Robert Cassilly
     County Executive         :
     220 South Main Street
     Bel Air, Maryland 21014    :

...oooOooo...

## <u>COMPLAINT</u>

NOW COMES Plaintiff, Dale Harris, by and through his attorneys, D. H. Andreas

Lundstedt, and the Law Office of Andrew M. Dansicker, LLC, and hereby files this Complaint

against Defendant Harford County, Maryland ("Harford County") for racial discrimination under

Title VII and Section 1981, and in support thereof states the following:

## <u>THE PARTIES</u>

1.     Plaintiff, Dale Harris, formerly employed by Harford County Department of

Public Works ("Harford County"), resides in Aberdeen, Maryland, and is an African-American

male.

2.     Defendant is a county in the State of Maryland which employs in excess of 500 employees.

3.     Subject matter jurisdiction is proper in this Court pursuant to 29 U.S.C. § 621 et. seq. as the case arises under federal law, Title VII of the Civil Rights Act and Section 1981, and personal jurisdiction is also proper in this Court because Defendant transacts extensive business in Maryland and the events giving rise to this litigation took place in Maryland.

4.     Venue is proper in this Court under 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to the claim occurred in the District of Maryland, Northern Division.

**FACTS**

5.     Mr. Harris began working for Defendant as a trade laborer on or about January 19, 1994.

6.     During his work tenure, Mr. Harris consistently received strong work performance evaluations for his outstanding performance and contributions.   At all relevant times prior to his discharge, his job performance was at a level that met and/or exceeded Defendant's expectations and requirements and he did not receive any counseling or discipline.

7.     At the time of his termination from employment, Mr. Harris was employed as a highway crew chief, a position he had held since 2005.

8.     As a highway crew chief, Mr. Harris was the only African American in a management role within Department of Public Works, Department of Parks and Recreation, Department of Facilities and Operations, and Department of Water and Sewer.

9.     On January 25, 2022, around 9:00am, Kenny Sexton, Chief of Highways, called

Mr. Harris on Mr. Harris's personal cellular phone, instructing Mr. Harris to see Jeff McCormick, Harford County internal investigator, at the headquarters at 220 S. Main Street in Bel Air, Maryland.

10.     Mr. Harris inquired why he was being asked to report to Mr. McCormick to which Mr. Sexton responded that he did not know.

11.     Once at the headquarters, around 9:15am, Mr. Harris was met by Mr. McCormick, who escorted Mr. Harris to Mr. McCormick's office on the third floor.

12.     Upon entering Mr. McCormick's office, Mr. Harris observed that Chris Beals, another county investigator, was waiting in the office. Mr. Beals did not communicate during the meeting.

13.     Mr. McCormick informed Mr. Harris that they had received an anonymous phone call about Mr. Harris and that was the reason for why Mr. Harris was required to report to headquarters.

14.     Mr. McCormick added that they did not know anything about the person who had filed the complaint, to which Mr. Harris responded that he believed it was his disgruntled ex-girlfriend who had threatened Mr. Harris and had now apparently filed a fictitious complaint against him.

15.     Mr. McCormick said that the anonymous complaint was not the problem but rather that Mr. Harris had allegedly been going to many places within Harford County in the work truck, including Mr. Harris' home and his own place of business that he runs independently from his employment with the county, and that Mr. Harris was conducting personal business during county work hours.

16.     Mr. Harris, without admitting to the allegations, simply responded that many people conduct personal business and go home during county work hours.

17.     Mr. Harris added that he was aware that some employees travel outside the county, and even leave the state, during work hours, and use a county vehicle for such travel.

18.     Mr. McCormick, who did not dispute the information Mr. Harris had relayed, cavalierly responded that he was not interested in what others are doing but that the investigation was only about Mr. Harris.

19.     Mr. Harris, who was the only African American within the department, expressed he felt targeted by the county's actions to include only him in an investigation about employee travel during work hours.

20.     Mr. McCormick did not respond to Mr. Harris' concerns but added that if Mr. Harris wanted to bring other people down, that was up to Mr. Harris.

21.     Mr. McCormick advised Mr. Harris that Kenny Sexton, Chief of Highways, had provided a copy of the Global Position System ("GPS") activity for the work truck Mr. Harris had been using and did not respond to Mr. Harris's request for a copy of the activity log.

22.     Mr. Harris asked Mr. McCormick what would happen next.

23.     Mr. McCormick answered that "things didn't look good because we have this," pointing to a folder that purportedly contained GPS printouts of Mr. Harris's driving history.

24.     Mr. McCormick added that it was ultimately Human Resources' decision what would happen to Mr. Harris.

25.     Before Mr. Harris was excused, he was informed that he was being placed on administrative leave, that he was not allowed to enter any County property, and that he was

required to turn in his County badge and surrender the keys to the County vehicle he had been operating.

26.     Two days later, on January 27, 2022, Mr. Harris was contacted by the Human Resources Department of Harford County, informing Mr. Harris of an upcoming pre-termination hearing.

27.     At the hearing, held on February 23, 2022, Mr. Harris explained to the attendees that the county GPS systems were faulty and inaccurate, and had been so since their installation, and that the County was aware that the GPS system in his vehicle was not operating correctly and needed to be replaced or repaired.

28.     Mr. Harris learned that the GPS system was in fact replaced in the vehicle assigned to him on or about January 27, 2022, only two days after his suspension went into effect.

29.     It was commonly known among the Department of Public Works employees that GPS records could not be used as a method to discipline employees.

30.     Mr. Harris also explained during the hearing that as a twenty-nine-year career employee with the County his performance has at all times been satisfactory or above, and that he has never received any form of discipline as a manager.

31.     Mr. Harris further explained that he was being discriminated against based on his race as he was the only African American Crew Chief and one of approximately ten African American employees working for Harford County Department of Public Works, a department that employs hundreds of workers.

32.     Mr. Harris went on to explain that the County's progressive disciplinary policy

was not applied equally to him as an African American and that he was aware of many Caucasian colleagues, including crew chiefs and supervisors, who were accused of, or had in fact committed, far worse transgressions, who were not being subject to the same harsh discipline.

33.    During the hearing, Mr. Harris offered to provide the County with information about how non-African American employees were not subjected to the same treatment, but the County responded that it was not important.

34.    On or about February 25, 2022, Mr. Harris received a termination letter.

35.    The termination letter made no mention of the facts raised by Mr. Harris during the hearing regarding the discriminatory treatment to which he had been subjected.

36.    Mr. Harris has learned that Harford County has a "hit list" of African American employees that the County wants to discharge.

37.    Mr. Harris is aware that in his entire tenure with Harford County there has only been one African American supervisor in the Department of Public Works, who retired.

38.    Mr. Harris is aware that in his entire tenure with Harford County no other African American has held a position more highly ranked than supervisor in the Department of Public Works.

39.    Mr. Harris conducted himself appropriately and he did not violate any known rules or protocol differently than his non-African American colleagues, who continue to violate rules while management is aware of such conduct occurring.

40.    Mr. Harris is aware that similarly situated Caucasian employees have not been disciplined nor discharged for the reasons for which the County discharged him.

41.    Mr. Harris is aware that the County has engaged in a pattern of treating African

American employees disparately from Caucasian employees with respect to discipline.

42.     Mr. Harris has suffered severe emotional distress as a result of the illegal termination, including sleeplessness, nightmares, detachment from other people, irritability, paranoia, inability to concentrate, mood swings, and outbursts of anger.

43.     Approximately two months after Mr. Harris's discharge, Charles Bankart, a Caucasian employee, was promoted to Mr. Harris's position.

44.     On or about April 12, 2022, Mr. Harris filed a charge with the Maryland Commission on Civil Rights ("MCCR") alleging race discrimination.

45.     On or about October 19, 2022, MCCR issued their findings of no probable cause, after which Mr. Harris requested the Equal Employment Opportunity Commission ("EEOC") to perform a substantial weight review.

46.     On December 1, 2022, the EEOC issued and mailed Notice of Right to Sue.

47.     Mr. Harris filed this Complaint within ninety (90) days of receiving his Right to Sue Letter on December 7, 2022.

## <u>COUNT I – RACIAL DISCRIMINATION</u>
### (Title VII)

48.     Plaintiff repeats and realleges all of the allegations in the preceding paragraphs of this Complaint as if the same were fully set forth herein.

49.     Mr. Harris is a member of a protected class, African American, entitled to protection against racial discrimination under Title VII.

50.     During all relevant times, Harford County was Mr. Harris's "employer" for purposes of Title VII.

51.     Defendant Harford County discriminated against Mr. Harris based on his race,

African American, by treating him differently than other, similarly situated, non-African American employees.

52.     Mr. Harris has suffered substantial financial and emotional distress damages as a direct result of the discriminatory conduct of Harford County.

WHEREFORE, Mr. Harris demands judgment in an amount greater than five-hundred thousand dollars ($500,000.00) against Defendant Harford County, Maryland in compensatory damages, including back pay and front pay, emotional distress, punitive damages, attorney's fees, interest and costs, reinstatement with all lost seniority and employee benefits (and if not reinstated, be awarded front pay and lost pension and employee benefits), and any and all other relief deemed appropriate by this Court.


## COUNT II – RACIAL DISCRIMINATION
### (Section 1981)

53.     Plaintiff repeats and realleges all of the allegations in the preceding paragraphs of this Complaint as if the same were fully set forth herein.

54.     Mr. Harris is a member of a protected class, African American, entitled to protection against racial discrimination under Section 1981.

55.     During all relevant times, Harford County was Mr. Harris's "employer" for purposes of Section 1981.

56.     Defendant Harford County discriminated against Mr. Harris by treating him differently than other, similarly situated, non-African American employees.

57.     Mr. Harris suffered substantial financial and emotional distress damages as a direct result of the discriminatory conduct of Harford County.

WHEREFORE, Mr. Harris demands judgment in an amount greater than five-hundred thousand dollars ($500,000.00) against Defendant Harford County, Maryland in compensatory damages, including back pay and front pay, emotional distress, punitive damages, attorney's fees, interest and costs, reinstatement with all lost seniority and employee benefits (and if not reinstated, be awarded front pay and lost pension and employee benefits), and any and all other relief deemed appropriate by this Court.

Dated: March 2, 2023                                        Respectfully Submitted,


                                                           _____/s/_____
                                                           D. H. Andreas Lundstedt (Bar # 28620)
                                                           Law Office of Andrew M. Dansicker, LLC
                                                           Executive Plaza II, Suite 705
                                                           11350 McCormick Road
                                                           Hunt Valley, Maryland 21031
                                                           Telephone: 410-771-5668
                                                           Facsimile: 443-927-7390
                                                           alundstedt@dansickerlaw.com

                                                           *Counsel for Plaintiff Dale Harris*

## **PRAYER FOR JURY TRIAL**

Plaintiff Dale Harris hereby requests a jury trial.

_____/s/_____
D.H. Andreas Lundstedt
